**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NURETTIN MAYAKAN,**

        **Plaintiff,**

**-vs-**                                                        **Case No. 6:09-cv-2099-Orl-31DAB**

**CARNIVAL CORPORATION,**

        **Defendant.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of Defendant's, Carnival Corporation ("Defendant"), Motion to Dismiss and Compel Arbitration (the "Motion") (Doc. 18), Plaintiff's, Nurettin Mayakan ("Plaintiff"), response in opposition thereto (the "Response") (Doc. 19), and the parties' supplemental briefs and authorities (Docs. 28, 44, 46, 48, 50, 51 and 52).

**I. Overview**

Plaintiff, a citizen and resident of Turkey, is a seaman who suffered severe spinal injuries while working as a headwaiter on Defendant's cruise ships.[1] Plaintiff alleges that he was initially injured on October 26, 2006 after Defendant compelled him to carry heavy boxes onboard *Carnival Conquest*, a Panamanian-flagged vessel sailing out of Galveston, Texas. (Doc. 16 at 3, ¶

---

[1] Defendant is a multi-national corporation incorporated in Panama with its principal places of business in Miami, Florida and London, England (according to its web site and most recent Form 10-K filing with the SEC, Defendant is a "dual-listed" company whose stock is traded on both the New York and London stock exchanges). *See* Corporation Information, Carnival Corporation, http://phx.corporate-ir.net/phoenix.zhtml?c=200767&p=irol-prlanding; Carnival Corporation, Annual Report (Form 10-K), at 3 (Jan. 29, 2010). "Carnival operates a fleet of 95 ships. . . . With approximately 200,000 guests and 70,000 shipboard employees, there are more than 270,000 people sailing abroad the Carnival fleet at any given time." *Id*.

7). Plaintiff further alleges that, notwithstanding its knowledge of his initial injury, Defendant compelled him to perform additional heavy work onboard the *Carnival Glory*, a Panamanian-flagged vessel sailing out of Port Canaveral, Florida, some time after June 16, 2007 and that this additional heavy work aggravated his initial injury. (Doc. 16 at 8, ¶ 22).

## II. Procedural History

Plaintiff originally brought suit in the Eighteenth Judicial Circuit Court in and for Brevard County, Florida. (Doc. 2). Defendant timely removed the action to this Court pursuant to 9 U.S.C. § 205, contending that Plaintiff's claims arise out of, and are related to, one or more arbitration agreements that are subject to the United Nations Convention on the Recognition and Enforcement of Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3, 1970 WL 104417 [hereinafter the "New York Convention" or the "Convention"] (Doc. 1, ¶ 9).[2]

On January 13, 2010, the Court dismissed the Complaint without prejudice for, *inter alia*, failure to comply with FED. R. CIV. P. 9(f). Thereafter, Plaintiff filed an amended complaint that predicated subject matter jurisdiction on 28 U.S.C. § 1333 and added three additional claims. (Doc. 16).[3]

---

[2]The United States, Monaco, Panama, and Turkey are each Contracting States to the Convention. The United States, Monaco and Turkey have entered certain reservations to the Convention. *See* Multilateral Treaties Deposited with the Secretary General (ST/LEG/SER/E) New York: United Nations, 1968-present, XXII-1, Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Declarations and Reservations, also available at http://treaties.un.org/doc/Publication/MTDSG/Volume%20II/ Chapter%20XXII/XXII-1.en.pdf [hereinafter Declarations and Reservations]. Panama has not. *Id.*

[3]The Amended Complaint contains six claims. Count I asserts a negligence claim pursuant to the Jones Act, 46 U.S.C. § 30104 *et seq.*, arising out of Plaintiff's October 2006 injury. (Doc. 16, ¶¶ 6-11). Count II asserts an unseaworthiness claim under general U.S. maritime law arising out of his October 2006 injury. (Doc. 16, ¶¶ 12-15). Count III asserts a claim for maintenance and cure under general U.S. maritime law arising out of Plaintiff's October 2006 injury. (Doc. 16, ¶¶ 16-21). Count IV asserts a negligence claim pursuant to the Jones Act arising out of his June 2007 injury. (Doc. 16, ¶¶ 22-29). Count V asserts an unseaworthiness claim under general U.S. maritime law arising out of Plaintiff's June 2007 injury. (Doc. 16, ¶¶ 30-33). Finally, Count VI asserts a claim for

On February 10, 2010, Defendant filed its Motion to Dismiss and Compel Arbitration, contending that this case must be arbitrated pursuant to the New York Convention. (Doc. 18 at 1). In support of its motion, Defendant relied on two seaman's contracts (discussed further, *infra*) that Plaintiff executed in 2006 and 2007, respectively.[4] If enforced, these contracts would require Plaintiff to arbitrate his claims under the substantive law of Panama in an arbitration proceeding to be held in Monaco.

On April 8, 2010, the Court ordered the parties to brief various choice of law issues. (Doc. 37).[5] Notwithstanding the choice-of-law provision in the parties' seaman contracts, both parties have agreed to use U.S. law – and have waived the use of Panamanian law – regarding the rule of decision to be applied to the arbitrability of Plaintiff's claims.[6]

---

maintenance and cure under general U.S. maritime law arising out of his June 2007 injury. (Doc. 16, ¶¶ 16-21).

[4]Defendant also argued that Plaintiff waived his right to litigate by filing for arbitration in March, 2009. During the initial arbitration, however, Defendant refused to consider the applicability of the Jones Act to Plaintiff's claims (Doc. 19 at 3-4). Furthermore, the initial arbitration does not appear to have resulted in any decision – final or otherwise – by the arbitrator. Accordingly, the Court finds that Plaintiff did not waive his right to litigate.

[5]The substantive law governing an agreement to arbitrate is susceptible to conflicts of law and choice-of-law provisions. *See*, *e.g.*, *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989); *Motorola Credit Corp v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004); *see also Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 766 (D.C. Cir. 1992); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 218 (current through June 2009); 2 LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS § 7A:4 (current through March 2010). Where a transnational agreement contains both choice-of-law and arbitration provisions and the law selected by the choice-of-law clause governs the arbitration provision, courts should generally enforce the agreement to arbitrate in accordance with the law selected by the parties.

[6]There are significant differences in the manner in which Panama and the United States apply the New York Convention. The United States, for instance, will only apply the Convention where the parties' relationship is considered "commercial under the national law of the United States." Declarations and Reservations; *see also*, *e.g.*, *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005). Panama has entered no such reservation. More importantly, though, the United States may refuse to compel arbitration and will disregard the parties' autonomy in selecting their own law if a contract "prospectively waives" a right to relief under certain U.S. statutes. *See*, *e.g.*, *Thomas v. Carnival*

The Court addresses Defendant's Motion to Dismiss and Compel Arbitration under U.S. law, *infra*. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 and notes that it may also have jurisdiction pursuant to 9 U.S.C. § 203 and 28 U.S.C. §§ 1331 and 1332.

## III. The Seaman's Contracts

As noted, *supra*, the parties entered into two seaman's contracts. The first, which was executed on or about July 30, 2006 and was in effect at the time Plaintiff suffered his initial injury, provided, in pertinent part:

> 6. <u>Commercial Legal Relationship</u>. Seafarer and Cruise Line acknowledge and agree that Seafarer's employment with [Carnival] constitutes a commercial legal relationship between the parties.
>
> 7. <u>Arbitration</u>. Any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration under the Arbitration Rules of the International Chamber of Commerce, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be one. The place of arbitration shall be London, England, Monaco, Panama City, Panama or Manila, Philippines whichever [sic] is closer to Seafarer's home country. . . .
>
> 8. <u>Governing Law</u>. This Agreement shall be governed by, and all disputes arising under or in connection with this Agreement or Seafarer's service on the vessel shall be resolved in accordance with, the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder. The parties agree to this governing law notwithstanding any claims for negligence, unseaworthiness, maintenance, cure, failure to provide prompt, proper and adequate medical care, wages, personal injury, or property damage which might be available under the laws of any other jurisdiction. . . .

---

*Corp.*, 573 F.3d 1113, 1122-24 (11th Cir. 2009); *Pavon v. Carnival Corp.*, Case No. 09-cv-22935 (S.D. Fla. Jan. 20, 2010); *Kovacs v. Carnival Corp.*, 2009 WL 4980277, Case No. 09-cv-22630 (S.D. Fla. Dec. 21, 2009). In contrast, Panama does not appear to apply any such exceptions to international agreements to arbitrate and its courts must flatly reject efforts to avoid arbitration. *See* Law Decree No. 5 art. 11, *Gaceta Oficial*, July 8, 1999. Finally, with respect to defenses raised under Article II(3) of the Convention, Panama has enacted a very detailed statutory scheme governing the duration, termination, and cancellation of seaman's employment contracts, Law Decree No. 8 arts. 31 - 58, *Gaceta Oficial*, Feb. 26, 1998, while U.S. substantive law regarding the "null and void" defense in Article II(3) remains amorphous. *Compare*, *e.g.*, *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104-110 (3d Cir. 2000) *with DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71,79-81 (1st Cir. 2000).

(Doc. 28-1 at 2-3).

The second seaman's contract was executed on or about June 16, 2007 and was in effect at the time Plaintiff aggravated his initial injury. Much like the first, the second contract provided:

> [This agreement]is hereby entered by and between [Carnival] and Seafarer, pursuant to the terms and conditions set forth below. Any other arrangements, agreements, or understandings regarding terms of employment are hereby canceled and superseded, and no amendment or exceptions to this provision are valid. . . .
>
> 5. This Seafarer's Agreement constitutes the sole and entire employment agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. . . .
>
> 6. <u>Commercial Legal Relationship</u>. Seafarer and Cruise Line acknowledge and agree that Seafarer's employment with [Carnival] constitutes a commercial legal relationship between the parties.
>
> 7. <u>Arbitration</u>. Except for a wage dispute governed by [Carnival's] Wage Grievance Policy . . . any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration under the American Arbitration Association/International Centre for Dispute Resolution International Rules, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be one. The place of arbitration shall be London, England, Monaco, Panama City, Panama or Manila, Philippines whichever [sic] is closer to Seafarer's home country. . . .
>
> 8. <u>Governing Law</u>. This Agreement shall be governed by, and all disputes arising under or in connection with this Agreement or Seafarer's service on the vessel shall be resolved in accordance with, the laws of the flag of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder. The parties agree to this governing law notwithstanding any claims for negligence, unseaworthiness, maintenance, cure, failure to provide prompt, proper and adequate medical care, wages, personal injury, or property damage which might be available under the laws of any other jurisdiction. . . .

(Doc. 28-1 at 5-6).

**IV. Applicable Law**

Article II of the Convention provides:

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.[7]

Convention, art. II.

The United States has implemented the New York Convention as follows:

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts. . . .

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial, including . . . [any maritime contract evidencing a transaction involving commerce], falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. §§ 201 and 202; *see also* 9 U.S.C. § 2.

---

[7]The Convention also provides that a court may refuse to enforce an arbitral award – but not an "an arbitral clause in a contract or an arbitration agreement" – if the court finds that the recognition or enforcement of the *award* would be contrary to public policy. Convention, art. V(2)(b) (emphasis added). *See Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 591 (7th Cir. 2001) (noting that Article II "dictates when a court should compel parties to an arbitration," but that Article V simply "lists the narrow circumstances in which an arbitration *decision* between signatories to the Convention should not be enforced") (emphasis added).

A seaman's contract that contains an agreement to arbitrate generally falls under the convention. *Bautista*, 396 F.3d at 1299 (holding that the Convention and U.S. implementing statutes do not recognize an exception for seaman employment contracts and concluding that such contracts are "commercial" for purposes of same) (citing *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 274 (5th Cir. 2002)); *see also Thomas*, 573 F.3d at 1117 (11th Cir. 2009).

In deciding a motion to compel arbitration under the Convention, the Court conducts a "very limited inquiry." *Bautista*, 396 F.3d at 1294 (citations and quotations omitted). Unless an affirmative defense[8] applies or there is a prospective waiver of a party's right to pursue U.S. statutory remedies, the Court must compel arbitration where: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a party to the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or the commercial relationship has some reasonable relation with one or more foreign states. *Id.* at 1294-95, n.7; *see also Thomas*, 573 F.3d at 1117 and 1122-24.

## V. Discussion

Upon careful review, the Court concludes that the four prerequisites to arbitration have been met. Accordingly, Plaintiff's claims must be arbitrated unless an affirmative defense applies or there is a prospective waiver of Plaintiff's right to pursue U.S. statutory remedies.

### A. Plaintiff's Affirmative Defense – Applicability of Article II(3)

According to Plaintiff, the second seaman's contract superseded all prior agreements between the parties, including the first seaman's contract. Because Plaintiff's initial injury

---

[8]The Convention's "null and void" clause, art. II(3), constitutes a limited affirmative defense to enforcement of an agreement to arbitrate. *See*, *e.g.*, *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000).

occurred during the first contract, which was putatively void at the time Plaintiff brought suit, Plaintiff argues that Counts I through III are no longer subject to the parties' choice-of-law and arbitration provisions. The Court disagrees.

Regardless of whether Plaintiff suffered two separate injuries, or one injury in 2006 which was aggravated by his injury in 2007, a nearly identical contractual provision in the parties' two seafarer's contracts requires arbitration in Monaco (the specified location closet to Plaintiff's home). That Plaintiff simply waited to file suit until after the parties executed the second contract is of no moment. Nothing in the second contract voids the arbitration clause in the first contract as to previously unasserted claims. Quite the contrary, both contracts clearly require arbitration of all claims arising out Plaintiff's service on each of Defendant's vessels. Accordingly, the Court rejects Plaintiff's reliance on Article II(3) of the Convention and finds the affirmative defense inapposite.

### B. Prospective Waiver of Plaintiff's Jones Act Remedies

Plaintiff also asserts that requiring arbitration of his Jones Act claims would amount to a prospective waiver of his statutory rights under U.S. law. Although there is a split of authority on this issue, the Court agrees that Plaintiff's Jones Act claims are not subject to arbitration.

In *Thomas*, the Eleventh Circuit held that an arbitration clause that required a seaman to arbitrate his Seaman's Wage Act claim (but not a Jones Act claim) in the Philippines under Panamanian law was unenforceable because the choice-of-law and arbitration provisions worked in tandem to operate as a prospective waiver of the seaman's right to pursue his statutory remedies under U.S. law. 573 F.3d at 1123-24. Accordingly, the Eleventh Circuit stated that arbitration clauses should be enforced only if: (1) U.S. substantive law would definitely be applied; or (2) there is a possibility that U.S. law will be applied and there will be a subsequent opportunity for review. *Id.* at 1123 (relying on *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

U.S. 614 (1985), and *Vimar Seguros y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528 (1995)).[9]

As one District Court has observed:

> Here, there is no uncertainty as to the governing law in the proposed arbitral proceedings – only [foreign] law will be applied. In this respect, the present case is identical to *Thomas*. *Id*. at 1122-23. . . . And therefore the question of whether there would even be a subsequent opportunity for review of the arbitrator's decision is irrelevant. *See id.* at 1123. . . . Accordingly, the Court finds that the arbitration provision in this case falls very much within the holding in *Thomas*. *Accord Kovacs v. Carnival Corp.*, 2009 WL 4980277, Case No. 09-22630-CV-HUCK (S.D. Fla. Dec. 21, 2009) (remanding case because, *inter alia*, [there would be a prospective waiver of plaintiff's U.S. statutory remedies if the Court were] to compel arbitration of seaman's Jones Act claim where Panamanian law would apply at arbitration); *Pavon v. Carnival Corp.*, Case No. 09-22935-CV-LENARD (S.D. Fla. Jan. 20, 2010) (remanding seaman's Jones Act claims in part because to arbitrate such claims would [prospectively waive Jones Act's imposition of] strict liability on employers for the negligence of its employees); *see also Sorica v. Princess Cruise Lines, Ltd.*, Case No. 09-20917-HUCK (S.D. Fla. Aug. 4, 2009) (recognizing that a provision providing for arbitration under Bermuda law in a Bermuda forum of a Jones Act claim is void under the *Thomas* analysis)[.]
>
> The Court is not persuaded by the argument that *Thomas* is inapplicable here because Jones Act claims were not subject to arbitration in that case, but rather only the plaintiff's Seaman Wage Act claims was arbitrable. The Defendant has not offered any reason why the right to bring a Seaman Wage Act claim should be afforded any more protection than the right to bring a Jones Act claim. Indeed, as this Court has held, "[A] holistic reading of *Thomas* indicates that the Eleventh Circuit's reasoning applies with equal force to claims brought pursuant to the Jones Act. . . ." *Cardoso v. Carnival Corp.*, 2010 WL 996528, \*3, Case No. 09-23442-CV-GOLD (S.D. Fla. Mar. 16, 2010) (finding that the choice-of-law and choice-of-forum provision, if applied in tandem, renders the arbitration agreement void . . . because the provisions operated as a prospective waiver of the seaman's Jones Act claim).

*Sivanandi v. NCL (Bahamas) Ltd.*, Case No. 10-CV-20296, 2010 WL 1875685, at \*3-\*4 (S.D. Fla. Apr. 15, 2010) (footnotes and certain citations omitted).

Upon review, the Court finds Judge Ungaro's analysis in *Sivanandi* – and the authorities cited to therein – persuasive. Absent additional guidance from the Eleventh Circuit, *Thomas*

---

[9]As the parties indicate in their briefs, however, the Eleventh Circuit may currently be revisiting this issue in the context of American (but not a foreign) citizen who asserts a Jones Act claim. *See Lathan v. Carnival Corp.*, No. 08-cv-23002, 2009 WL 6340059 (S.D. Fla. Apr. 9, 2009), *appeal docketed*, No. 09-12405-CC (11th Cir. May 7, 2009).

generally precludes arbitration of Jones Act claims. Accordingly, Defendant's Motion will be denied as to Plaintiff's Jones Act claims.

## VI. Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Compel Arbitration (Doc. 18) is **GRANTED** in part and **DENIED** in part;

2. Pursuant to 9 U.S.C. § 206 and the United Nations Convention on the Recognition and Enforcement of Arbitral Awards, the parties are referred to and shall immediately proceed to Monaco for an arbitration of Counts II, III, V and VI of Plaintiff's Amended Complaint;

3. Defendant's Motion to Dismiss is **DENIED** and Counts II, III, V and VI of this case are hereby **STAYED** pending the arbitration proceedings in Monaco;[10]

4. The parties are directed to file a brief report regarding the status of the arbitration proceedings by no later than **August 13, 2010** and every three (3) months thereafter and, upon a showing of good cause, either party move to lift the stay;

5. By no later than **Monday, June 28, 2010**, Defendant shall file its Answer to Counts I and IV of the Amended Complaint.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 14, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[10]*See* 3 LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS § 19:10 ("When the enforcement of the arbitration agreement [pursuant to the Convention and its U.S. implementing statutes] directs arbitration in a foreign nation, a court will often stay rather than dismiss its proceedings. . . .") (citations omitted).